# Bradley's Appeal.

1. Trustees in domestic attachments are not merely ministerial officers, but are vested with extraordinary discretionary powers.

2. Trustees who have acted in good faith, and under the advice of counsel, are not responsible for an error of judgment or a mistake of law.

3. A writ of domestic attachment issued against S. & Co., and was placed in the sheriff's hands at 2.10 P. M. On the same day, at 3 P. M., the sheriff received a fieri facias issued against S. by a judgment-creditor. A dispute arose between the trustees under the domestic attachment and the execution-creditor, in regard to the legal effect of the seizure of the property upon their respective writs, and under the advice of counsel an agreement was entered into whereby certain property was taken by the trustees and certain other property was taken by the execution-creditor. *Held*, that the attachment being prior in point of law, the property was in *gremio legis* when the levy was made, and it was therefore void, yet that such a compromise was within the discretion of the trustees, and having been made in good faith and under the advice of counsel, they could not be surcharged.

4. McCready *v*. Guardians of the Poor, 9 S. & R. 94, explained.

March 25th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ.

Appeal from the Court of Common Pleas of *Chester county:* January Term 1879, No. 188.

[Bradley's Appeal.]

Appeal of C. H. Bradley and others, trustees under a writ of domestic attachment from the decree of the court confirming the report of the auditor appointed to make distribution of the assets in the hands of said trustees.

On the 23d of July 1875, Daniel Gilbert issued a domestic attachment against John J. Shallcross & Co., alleging in his affidavit that John J. Shallcross & Co., were indebted to him, and that John J. Shallcross had absconded, &c. This writ was received by the sheriff at 2.10 P. M., and at 3 P. M., of the same day the sheriff received a fi. fa. for a debt of $2000, issued by Henry G. Thomas, on a judgment which had previously been confessed by John J. Shallcross. A store at Coatesville, Chester county, was conducted in the firm name of John J. Shallcross & Co., and a farm of twenty-two acres near that borough was conducted by John J. Shallcross individually. John J. Shallcross had absconded and no one would admit being a partner, hence the issuing of a domestic attachment. Daniel Gilbert, the plaintiff in the domestic attachment, had furnished flour and feed to the store, and held promissory notes signed John J. Shallcross & Co., hence the *firm* was made defendant. Bradley and two others were appointed trustees under the attachment.

The title to the farm was in John J. Shallcross and Frederick Schulemeister as tenants in common; but the latter denied any partnership whatever in the store business, and alleged that he was only an employee on the farm, and that he had no interest in the business. The sheriff attached and levied upon all the personal property on the farm, and upon all the store property under the writ of domestic attachment, and he also levied upon the same property under the fi. fa.

The counsel for Thomas claimed his fi. fa. was entitled to all the property; that it took the store property, because there was no such firm as John J. Shallcross & Co., against which *firm* the writ of domestic attachment had issued; or if there were such a firm, then Frederick Schulemeister must be the other member, and he, not having absconded, the domestic attachment was void; and especially did he claim that his fi. fa. held the farm property, because said farm was conducted and controlled exclusively by John J. Shallcross, and not in the name of any company, and that the domestic attachment having been issued against Shallcross & Co., could not take what was exclusively the individual property of Shallcross.

The counsel for the trustees took issue with these views and proceedings were commenced to have the questions tested by a sheriff's interpleader. It appeared also to be a question of doubt whether Schulemeister was a partner. It being uncertain, therefore, whether the trustees, the claimants in the interpleader would be able to establish their title to all or any part of the property, under the advice of counsel, a compromise was effected and an agreement

entered into by the counsel of the trustees and the counsel of the
execution-creditor, whereby the interpleader proceedings termin-
ated, and it was agreed the trustees should take the store property,
and the execution-creditor the property on the farm, and the liens
were mutually released. The property on the farm was subse-
quently sold by the sheriff for $1516.58. When the trustees filed
their account they did not charge themselves with this fund, where-
upon certain creditors filed exceptions thereto and it was referred
to an auditor, P. F. Smith, Esq. The auditor, after detailing the
facts, as set forth in substance above, inter alia, reported as follows:

"The apparent relations of Shallcross and Schulemeister were
such as to make it uncertain to the public whether they were part
ners or not; many of the circumstances might reasonably lead to the
belief that they were partners.     *     *     *     For the sale
of the goods, or any of them, under the Thomas execution, by the
sheriff, he would be liable to the trustees, unless he was relieved by
their agreement; that even that would relieve him is by no means
clear. They themselves were mere ministerial officers like himself,
with specific duties and powers assigned them: McCready v. Guard-
ians, 9 S. & R. 99, of which he was bound to take notice. If they
attempted to do an act which was ultra vires, as to which they had
no discretion, it is by no means clear that they, or other trustees
appointed in their place, would be concluded by their unlawful con-
sent for the sale of the goods to the injury of the real parties—the
creditors who had no power to intervene.

" Now, were the trustees mere ministerial officers *without* discre-
tion? McCready v. Guardians, above cited, asserts they were
ministerial officers; that they 'are not judicial officers, but are
ministerial officers of justice.' * * *

" How do these trustees claim to relieve themselves for not account-
ing for the goods sold by the sheriff? They say they acted in good
faith, under the advice of counsel, and under circumstances which
would cause a prudent man to pause—circumstances which justified
them in entertaining the fear that if they pursued the controversy,
instead of recovering the goods which the sheriff sold, they would
lose those which the execution-creditor was willing, by way of com-
promise, that they should retain.

" The evidence on this part of the case was, that on the 1st of
April, preceding the issue of the attachment, Shallcross, who before
that time had been conducting business in his own name, put up a
sign ' J. J. Shallcross & Co.,' at his place of business; that a farm
was purchased by Shallcross & Schulemeister, as tenants in com-
mon; that truck came from the farm to the store, and was there
sold; that the store books were from the 1st of April opened in the
name of ' J. J. Shallcross & Co.;' that he said about that time
that he had taken Schulemeister into partnership—with other cir-
cumstances tending to show that they were partners. Under the

advice of counsel, the writ was issued against J. J. Shallcross & Co., on the ground that Shallcross had absconded.    After the execution was issued against Shallcross, and the controversy arose about the ownership of the goods, it was still claimed that the goods were bound by the domestic attachment, as the goods of *Shallcross & Co.*

" To test the question, the interpleader was advised by counsel, he being of opinion that if there were no partnership, the goods would not be held by the attachment, but would be liable to the execution as the goods of Shallcross.. The counsel testified that the trustees refused to enter into an interpleader bond, and sent a declination of the trust, and he (counsel) had become satisfied that there was no partnership.    He further became satisfied that even if Schulemeister was a partner the attachment would not lie ; that therefore they would be defeated, and that Thomas's execution would take everything.    He therefore advised a compromise, and the trustees obtained the goods in the store, which otherwise, in his opinion, they would not have got.    There can be no doubt that the trustees acted in the most perfect good faith, and did what they believed was not only for the best interests of the estate, but also what was in accordance with law.    Under the assumption that they were trustees with discretionary powers, they acted also with proper diligence.    For although they might have applied to the court, which had jurisdiction of both processes to set aside the execution which as now appears would have been done (Robinson *v.* Atlantic and G. W. Railway, 16 P. F. Smith 160), yet the matter was undecided, and their counsel was of opinion that by proceeding they would lose all, and that they would be justified in making a compromise by securing half.

" But as has been shown, they were ministerial officers without any discretion to settle controversies ; they were bound to know the law, that the goods were in their custody, and, therefore, if the sheriff withheld them on their demand, they were bound to apply to the court to compel him to deliver them.    At all events, being such officers, they could not act of themselves even in a doubtful matter ; they were bound to have their rights ascertained by a judicial determination.

" They had no more authority to compromise a dispute as to the right of property, because they thought it would be for the benefit of the creditors, than would the sheriff have had whilst the goods were in his custody if he had been of the same opinion ; or as to goods taken in execution if he thought it for the benefit of the execution.    The auditor is therefore of the opinion that the trustees are chargeable with the portion of the goods seized by the sheriff which they gave up to him to be sold under Thomas's execution. The sales of the sheriff amounted to $1516.58.

" The auditor has been urged to charge the cost of the audit upon the trustees.    But inasmuch as they have acted with the most per-

[Bradley's Appeal.]

fect good faith, under the advice of counsel, in circumstances. entirely new, and as to which the law was not clear; and as an experienced public officer had involved them in their difficulties, and, as without any possibility of their preventing it, the proceedings were delayed three years, and all that they did, which was supposed to lead to wrong, appeared of record, and by public judicial sales, and the creditors with all their opportunities of knowledge, and probably with actual knowledge, took no steps to advise with the trustees or to caution them, the auditor thinks he should not recommend the court to impose the costs on them in a case where there is no statutory injunction regulating the imposition of costs."

The trustees filed exceptions, which the court, Butler, P. J., without filing an opinion, overruled, when this appeal was taken.

*William M. Hayes, William B. Waddell, William E. Barber* and *William T. Barber,* for appellants.—The auditor likens the trustees under a domestic attachment to a sheriff, and asserts they are without discretionary powers; that they have not the power to settle disputed claims, nor to compromise suits, except by the direct sanction of the court. We submit that an inspection of the Domestic Attachment Act will not justify such a conclusion, and that, on the contrary, such trustees are vested with extraordinary discretionary power. Under the act, the court is empowered to appoint three honest and discreet men, who are required to take an oath to execute the trust according to the best of their skill and understanding, and a majority are authorized to exercise all the powers and perform all the duties required. If they are but the agents of the court, then it was unnecessary to confer such powers upon them, or why appoint so many as three? We submit that the act rather constitutes them a tribunal of their own, and clothes them with power to enforce their decrees.

There is no instance where trustees have acted in good faith, and under the advice of counsel, in which they have been held responsible: King *v.* Morrison, 1 P. & W. 196; Neff's Appeal, 7 P. F. Smith 91; During, King & Miller's Appeal, 1 Harris 234; Chambersburg Saving Fund Association's Appeal, 26 P. F. Smith 203.

*R. Jones Monaghan* and *Charles H. Pennypacker,* for appellees.—The levy under the execution was void, as the same property, already in the custody of the law under the domestic attachment, could not again be taken by the execution. It was only necessary for the trustees to have asked the court to set aside the levy of the execution, when all the supposed complications of this case would have been solved, and that levy have been stricken off.

The trustees, however, actively made claim to the property so levied under a void levy. But having done so, and an interpleader

issue having been framed, they did not, by mere sufferance, allow Thomas to take by his execution farm stock to the value of $1516.58, but proceeded actively in the matter by refusing to give an interpleader bond, and did not, by petition, suggestion or in other manner, seek the instruction of the court that had appointed them as to their duties or responsibilities in the premises, but chose, rather than give a bond or seek relief from so doing from the court, to abandon property of which they had the custody.

The authority of trustees in domestic attachment is wholly statutory. Anything done by them outside of their express statutory powers is *ultra vires* and null and void. Thus, trustees in partition proceedings or the like cannot add to or modify the terms of sale prescribed by the court, nor can corporations act outside of the powers conferred by their charter.

These trustees cannot, under the Act of 1836, even sell perishable property, except after an order of the court. If they could not sell, surely they could not give away.

Mr. Justice PAXSON delivered the opinion of the court, May 7th 1879.

This was an appeal by trustees under a writ of domestic attachment from the decree of the court below, dismissing the exceptions and confirming the report of the auditor appointed to make distribution of the assets in the hands of said trustees. The auditor and the court below surcharged the appellants with the sum of $1516.58, being the entire proceeds of a sheriff's sale of certain personal property of the defendant in said attachment, which had been levied upon and sold under a writ of fieri facias. It appeared that the writ of domestic attachment was issued against John J. Shallcross & Co., upon an affidavit charging that John J. Shallcross had absconded, &c. This writ was received by the sheriff at 2.10 P. M., on the 23d of July 1875, and at 3 P. M., of the same day, the sheriff received the writ of fieri facias above mentioned, which was issued by Henry G. Thomas, upon a judgment which had been previously confessed by Shallcross. The sheriff attached and levied under both writs the stock of goods in a store at Coatesville, conducted under the firm name of John J. Shallcross & Co., and also all the personal property on a farm near Coatesville, conducted in the name of John J. Shallcross individually, but the title to which was alleged to be in the said Shallcross and one Frederick Schulemeister. A dispute arose between the trustees and the execution-creditor in regard to the legal effect of the seizure of the said property upon their respective writs, and, under the advice of counsel, a compromise was effected, and an agreement entered into between the counsel of the trustees and the counsel of the execution-creditor, whereby it was agreed that the trustees should take the store property, and the execution-creditor should take the farm and

the personal property belonging thereto.   The auditor distinctly finds the fact that in making this arrangement the trustees acted under the advice of counsel, " in the most perfect good faith, and did what they believed was not only for the best interests of the estate, but also what was in accordance with law."   Yet he has surcharged them with the entire proceeds of the sheriff's sale, not even allowing for the necessary expenses thereof, which ruling, upon exceptions filed by the trustees, was confirmed by the court below.

No opinion was filed by the learned judge, and we are therefore obliged to look to the report of the auditor alone for the reasons upon which this ruling is based.   Briefly stated they are that trustees, under a domestic attachment, are purely ministerial officers; that they have no discretionary powers; no right to make compromises and settle controversies.   The learned auditor says : " They had no more authority to compromise a dispute as to the right of property, because they thought it would be for the benefit of creditors, than would the sheriff have had whilst the goods were in his custody, if he had been of the same opinion ; or as to goods taken in execution, if he thought it for the benefit of the execution. The auditor is therefore of the opinion that the trustees are chargeable with the portion of the goods seized by the sheriff which they gave up to him to be sold under Thomas's execution.   The sales of the sheriff amounted to $1516.58."

We think the auditor was clearly right in holding that the trustees made a mistake in relinquishing their claim to the property sold under the fieri facias.   It is true there was no duty upon them to give a bond under the sheriff's interpleader.   Nor do I see how the court could have compelled them to do so.   But they might and ought to have applied to the court for relief. The attachment being prior in point of time, the property was in *gremio legis*, and in a proper case the court would make such order as might be necessary for the protection of all the interests involved: Robinson *v.* Atlantic and Great Western Railway Co., 16 P. F. Smith 160.   But the conclusion of the learned auditor that the trustees are necessarily liable to be surcharged with the proceeds of the sheriff's sale is not so satisfactory.   His argument that trustees under a domestic attachment are ministerial officers without discretion, like a sheriff, rests in a great measure upon the case of McCready *v.* The Guardians of the Poor, 9 S. & R. 94. That case, however, is not authority for such a doctrine.   It is true it was said by Justice Duncan in delivering the opinion of the court, referring to trustees under a domestic attachment: " These men are not judicial officers, but are ministeral officers of justice."   The point decided in that case was, that in an action of trespass, or trover, by two or three trustees under such attachment, the court after verdict will presume that all three were appointed and qualified, and that one is since dead.   As this case

wholly fails to sustain the position assumed, and no other has been cited which does, we must look to the Domestic Attachment Act of 13th June 1836, Pamph. L. 616, Purdon 518, as our guide. It requires but a cursory examination of said act to see that trustees appointed under it are clothed with extraordinary powers. To enumerate them all would be tedious and unprofitable. It is sufficient for present purposes to say, that from and after their appointment such trustees shall be deemed to be vested with all the estate of the debtor at the time of issuing the attachment, and are required to take into their possession all of said estate, and all books, papers and vouchers relating to the same; they may sue for and recover in their own names, all the said estate, and all debts and things in action belonging to the debtor; they may summon before them and examine on oath or affirmation, all persons residing within the county *supposed* to be indebted to the defendant, and such other persons residing as aforesaid, *as they shall think fit*, touching the real or personal estate of the defendant; and in case any person so summoned shall refuse to attend, or to be sworn, or to make answer, the trustees *may commit such person to the prison of the county*, there to be confined until he shall submit to be examined; they may issue their warrants under their hands and seals, to break open in the day time, houses, chambers, shops, stores or warehouses of the defendant, or any doors therein, and any trunks or chests of the defendant, in which his goods and effects, books of account or papers relating to his estate, shall be, or *shall be reputed to be*, and to seize the same for the benefit of creditors; they may redeem property that has been pawned or pledged; they may sell the personal estate of the debtor without any application to the court, at any time after the term next succeeding that to which the writ is returnable, and the real estate at any time after the third term, and to grant, assign, or *sell* the debts due or to become due the defendant. An argument is not needed to show that trustees clothed with such powers as I have enumerated are something more than ministerial officers. There is no possible analogy between their duties and those of a sheriff. The oath which the trustees take implies discretion. They are " to execute the trust reposed in them, according to the best of their skill and understanding," &c. No other class of trustees have such delicate, hazardous, and responsible duties to perform. To say that a trustee who may send a man to prison for his refusal to answer, is a mere ministerial officer, is a proposition, the mere statement of which carries with it its own swift refutation.

There is a line of authorities which hold that trustees who have acted in good faith, and under the advice of counsel, are not responsible for a mere error of judgment, or a mistake of law. It is sufficient to refer to King v. Morrison, 1 P. & W. 188; During, King and Miller's Appeals, 1 Harris 224; Neff's Appeal, 7 P.

[Bradley's Appeal.]

F. Smith 91, and the Savings Fund's Appeal, 26 Id. 203. Trustees must of necessity seek the advice of counsel in the performance of their duties. Not to do so would, in many instances, be gross negligence. It would be a harsh rule to require trustees to seek legal advice, and then hold them responsible for an error of law committed by their counsel. In the language of Chief Justice GIBSON (1 Harris 235), it "would throw the execution of trusts into the hands of knaves or fools."

We are of opinion that the case in hand comes within the principle laid down in the authorities referred to, and that it was error to surcharge the appellants with the proceeds of the sheriff's sale. It is easy now to see how the mistake in question might have been avoided. It might not have been so easy at the time it occurred. It certainly was not so to the trustees. Acting in good faith and in the strict line of their duty they sought the advice of respectable and experienced counsel. It would be harsh as well as unjust to hold them responsible for his error of judgment, and the law does not require us to do so.

The decree is reversed, at the costs of the appellees, and distribution ordered in accordance with the principles of this opinion.