## FRANK T. MOORHEAD v. B. WOLFF, JR.

ERROR TO THE COURT OF COMMON PLEAS NO. 1 OF ALLEGHENY COUNTY.

Argued October 31, 1888—Decided January 7, 1889.

(a.) The petition of a testamentary trustee, for the sale of real estate under the act of April 18, 1853, P. L. 503, set forth that the propery was unproductive and a charge to the estate; that there were certain contingent remainders therein created by the will (a copy of which was attached) affecting the marketable value of it, etc., with sufficient reasons for a private sale.

(b.) The land was subject to the lien of a mortgage made in the decedent's lifetime, and of two judgments entered against beneficiaries after her

death, neither of which liens was provided for in the order of sale granted, or in the private sale made in accordance therewith.

1. In such case, the Orphans' Court to which the petition was presented had jurisdiction to grant the order for a private sale; the contingent interests to be barred thereby could be amply secured by proper orders respecting the purchase money, under § 6 of the act; the rights of the purchaser could be fully protected by proper orders to the trustee for the discharge of said liens, and the contract of sale was enforceable.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK, WILLIAMS and HAND, JJ.

No. 220 October Term 1888, Sup. Ct.; court below, No. 189 September Term 1888, C. P. No. 1.

On July 24, 1888, a summons in assumpsit was served in an action by B. Wolff, Jr., executor and trustee under the will of Martha McD. Smith, deceased, against Frank T. Moorhead. The controversy arose upon the plaintiff's statement and the defendant's affidavit of defence.

The plaintiff's statement set forth the facts following:

To No. 280 December Term 1887, B. Wolff, Jr., presented his petition to the Orphans' Court of Allegheny county setting out that Mrs. Martha McD. Smith had died in 1880, seised in fee inter alia of a lot of ground in the first ward of Allegheny city, at the corner of Allegheny and Lincoln avenues, and leaving a last will, admitted to probate on February 24, 1880, devising to her executors therein named, of whom the petitioner was the sole survivor, all her real estate, including that above mentioned, in trust, inter alia, for the following purposes [quoted from the petition]:

1. To apply the proceeds of personal property and the net rents, issues and profits of real estate, to the payment of debts and certain legacies.

2. After certain payments have been made, as therein directed, to divide the net rents, etc., among her five children hereinafter named; that portion thereof payable to her two daughters, to be for their sole and separate use, and in case of the death of any of the said children, the child or children of a deceased son or daughter to enjoy the parent's share.

3. Upon the full execution of the previous provisions in regard to the trust thereby created, the testatrix directs that the whole of her remaining property and estates (including

the real estate above described), so far as known and in undisputed possession and of ascertainable value, shall be valued and appraised by disinterested citizens of Allegheny county, who shall value and appraise and make partition of her said property and estates in as many parts or shares as there shall then be of her children living and child or children of any that may be dead, computing per stirpes. She then further provides that "the partition and allotments in severalty so made, shall operate as a devise and bequest by me of said several parts or shares to such of my children as shall then be living, for and during his and her natural life, and to the surviving widow of any of my sons, during her life, if such son shall have left living issue, so long as she shall remain his widow. Upon the death of any son having a child or children, grandchild or grandchildren, his share or part shall go to such descendant, per stirpes, in fee and absolutely, subject to the estate given as aforesaid to his widow, if any. At the death of my daughters respectively a share of each shall go directly in fee and absolutely to her child, children, or other descendant per stirpes, without any estate or interest therein of her husband; provided, however, that any of my sons or daughters may by last will or testament, or appointment in nature thereof, direct in what way or proportions the same shall go to his or her descendants, and my daughters may, if they have living issue at their death, respectively give and devise an interest or estate for life to their surviving husbands, in not exceeding one third of their said estates. And should any of my said sons or daughters die having no living issue, their shares or parts shall thereupon go to the survivors and to their descendants, and the descendants of such as may have died leaving issue, per stirpes, according to the limitation, and for the estates aforesaid:" Thus creating as your petitioner is advised, contingent remainders which it is desired by this petition to defeat. Said will gives no authority to your petitioner to sell real estate, except in a contingency which has not arisen.

The petition then showed that the testatrix left her surviving five children, naming them, four of whom were married and had children, whose names and ages were given; and further represented that the real estate first above referred to was subject to a mortgage, made by the decedent in her life-

time, to James Veech, trustee, for $7,000, assigned of record to Mrs. Anna M. Fahnestock; that the property was entirely unproductive and was costing the estate $450 per annum for interest on said mortgage, and taxes; that the petitioner had been offered $16,000 at private sale for said property by Frank G. Moorhead, and he had agreed to sell the same, subject to approval, etc.; that the price offered was a good one, better, he believed, than he could obtain at a public sale, etc.: "Your petitioner, therefore, showing to the court by the statements above made that it will be for the interest and advantage of those interested that the said property should be sold, and that the same may be done without injury or prejudice to any trust, charity or purpose for which the same is now being held, and without the violation of any law which confers an immunity or exemption from sale or alienation, and, having attached hereto a copy of the said will, in which the trusts above mentioned are more fully and at large set forth, respectfully prays the court to decree a private sale of said property upon the terms and conditions above stated, for the purpose, inter alia, of barring or defeating the contingent remainders above mentioned. And he will ever pray," etc.

Citations awarded upon the foregoing petition were duly served upon the life tenants and such of their children as were in esse, and on February 18, 1888, Mr. R. D. Wilson, appointed guardian ad litem of the minor children of the life tenants and trustee of the contingent remaindermen in posse, answered that it would be for the best interest of the parties represented by him that the property should be sold. Thereupon the court signed a decree authorizing a private sale of the premises described, in fee simple, "free of any contingent remainders therein or of any entailment thereof, or of the right of the commonwealth to have inquisition for or forfeiture of the same."

On April 20, 1888, a written contract was signed by Frank T. Moorhead agreeing to purchase the premises described for $16,000, and broker's commission of $250, "if the title is satisfactory;" and on return made of said sale to the court, on March 3, 1888, it was duly confirmed.

The plaintiff then further set forth the refusal of the defendant to pay according to his contract of April 20, 1888, his own

willingness to discharge the lien of the mortgage upon the property sold, and prayed judgment for the amount to be released upon the defendant's compliance with the terms of said agreement, etc.

The defendant's affidavit of defence, set forth, in substance, (1) that the mortgage made by the decedent in her lifetime to James Veech, in trust, was now assigned of record for the sum of $8,837.50, and no provision had been made for the payment of the same except out of the proceeds realized from the private sale, which sale having been made for the purpose of barring contingent remainders, and the money realized therefrom substituted for the land, the defendant was advised the mortgage could not be paid in that manner; (2) that the said lot of ground was further incumbered by two certain judgments against two of the life tenants, the numbers, terms, and amounts of which were set out, the liens of which the plaintiff had neglected and refused to remove, wherefore the title offered was not satisfactory. A copy of the will of the decedent was attached and made a part of this affidavit.

On a rule for judgment for want of a sufficient affidavit of defence, the court, STOWE, P. J., on September 9, 1888, ruled:

Even assuming that the Orphans' Court had no power under the act of 1853 to direct the sale of land for the payment of debts, I think there is sufficient upon the face of the petition filed in the proceeding there, to give that court jurisdiction under the act. If this is so, I do not think it makes any difference whether the interests of the sons of testatrix were under the will vested or contingent, so far as the present case is concerned.

The rule for judgment is now made absolute.

Judgment having been entered for the plaintiff for $16,823.19, the defendant took this writ, assigning as error the order making absolute the rule for judgment, instead of discharging said rule.

*Mr. George P. Hamilton,* for the plaintiff in error:

The contract of purchase was expressly made "if the title is satisfactory." Satisfactory to whom? Certainly not to the

vendor, but to the vendee. The objection, however, must be made in good faith, and the action being upon articles for the sale of land to recover the purchase money, it is in effect an equitable proceeding to compel specific performance of the contract, and is governed by the same equitable principles: Nicol v. Carr, 35 Pa. 381; Swayne v. Lyon, 67 Pa. 436; Singerly v. Thayer, 108 Pa. 291. We submit that the title was not satisfactory, and its rejection not capricious, because:

1. The petition for the sale is made by the executor and trustee under § 3, act of April 18, 1853, P. L. 503. Does this mean a trustee interested in the estates of the life tenants, or contingent remaindermen to be barred, or any trustee, whether interested or not? The trusts created by the will and lodged in the executor were only to continue until (1) debts were paid out of the personalty and the rents, issues and profits of the real estate; and (2) until a legacy of $5,000 was paid. The trusts then cease, and the land is devised to the testatrix's children for life, remainder to their children. The act does not contemplate a sale by an executor whose whole duty is to bring the estate into court for distribution. The estate of a trustee is commensurate with the purposes of the trust and ceases when there are no further duties to perform: Williams's App., 83 Pa. 377. The court must obtain jurisdiction in a legal manner: Pittsburgh v. Walter, 69 Pa. 366; Leedom v. Lombaert, 80 Pa. 381; if it do not, its decree may be impeached collaterally for want of jurisdiction: Torrance v. Torrance, 53 Pa. 505; Leedom v. Lombaert, supra; Elliott v. Piersol, 1 Pet. 328; and the facts set forth in the petition settle the question of jurisdiction: Torrance v. Torrance, supra. The only reasons for a sale, in which the petitioner is interested, so far as contained in the petition, are for the payment of debts and the legacy; but there is no act of assembly authorizing a private sale of real estate for the payment of debts: Spencer v. Jennings, 114 Pa. 618.

2. The land is incumbered by the mortgage executed by the decedent in her lifetime, and the decree does not provide that the sale shall be subject to this mortgage, or that the land shall be sold free and discharged of liens. The lien of the mortgage is therefore preserved, not only by § 2, act of March

23, 1867, P. L. 43, but also by the act of March 22, 1887, P. L. 6. Can the purchase money of the sale be used for the payment of this mortgage? Section 6 of the act of 1853, which provides that the purchase money shall in all respects be substituted for the land, after payment of liens, when read with § 2 of the act of 1867, means that only liens which are discharged out of the sale shall be paid out of the purchase money. And since the act of 1867, the purchaser at private sale is bound to see to the application of the purchase money, except when the sale is for the payment of debts which are liens not of record: Price on the Price Act, 131. The mortgage is one certain debt known to the trustee's vendee. It therefore falls within the principle that where the trust is of such a nature that the purchaser can reasonably be expected to see to the application of the purchase money, as if it be for the payment of legacies which are scheduled or specified, he is bound to see that the money is applied accordingly: Grant v. Hook, 13 S. & R. 259; Cadbury v. Duval, 10 Pa. 265; First N. Bank's App., 19 W. N. 309.

3. There are judgments against certain of the life tenants. (*a*) The life tenants take a vested remainder for life to vest in possession on the determination of the trust estate: 2 Amer. L. C. on Real Property, Sharswood & Budd, 281. Every kind of estate in land is bound by the lien of a judgment: Drysdale's App., 15 Pa. 457; Amelong v. Dorneyer, 16 S. & R. 323; Mitchell v. Hamilton, 8 Pa. 486; Thomas v. Simpson, 3 Pa. 69; Hoffman's Est., 2 Pears. 317; Ogden v. Knepler, 1 Pears. 145; De Haas v. Bunn, 2 Pa. 335; Reed's App., 13 Pa. 476. (*b*) Are these liens divested? They are preserved, in case of a private sale, by § 2, act of March 23, 1867, P. L. 43. (*c*) The act provides that all parties having a present or expectant interest in the land to be sold must be made parties or warned by citation. A lien creditor has an interest, in that he has a right to proceed against the land to enforce payment of his lien. True, in cases of amicable partition, an incumbrancer is not entitled to be made a party, because his incumbrance is transferred from the undivided interest to the interest held in severalty: Long's App., 77 Pa. 151. But here the lien creditors are not parties to the proceeding and are not bound by it, and in the years to come, the vendee of this trus-

Arguments.

tee may be annoyed and harassed by a sale of the life estates under these judgments. A title is not marketable, which exposes to litigation: Swayne v. Lyon, 67 Pa. 436.

*Mr. W. K. Jennings* (with him *Mr. R. D. Wilson*), for the defendant in error:

The marketable character of a title is "a question for the determination of the court, on the papers and other facts submitted to it, and the opinion of a witness, however learned, could avail nothing:" Murray v. Ellis, 112 Pa. 485. And there is no analogy between a contract for the sale of a patent elevator, which any sensible man would want to test before paying for it, and an agreement for the sale of real estate. Singerly v. Thayer, 108 Pa. 291, is therefore irrelevant.

1. Section 3, act of April 18, 1853, P. L. 503, provides that such sale "may be decreed on the petition of any trustee, guardian, committee, or person interested," and § 4, that it may be made "by trustees, executors, administrators, guardians, committees, or owners having a present interest." Undoubtedly, Mr. Wolff is an owner having a present vested interest, for he is in possession under the will. Moreover, an inspection of the petition will reveal the fact that it contains averments answering to four distinct grounds of jurisdiction under § 2 of the act.

2. The two judgments against the alleged life tenants are not liens upon the real estate sold. The interest of the defendants is that of a contingent remainder. The cases cited, as to a process sale of the interests of these defendants, simply amount to this, that a judgment creditor may levy upon and sell a contingent interest, and, if the interest ever becomes vested, the purchaser may take the interest instead of the defendant. But the proceedings under the act of 1853, are for the very purpose of barring the contingent interests. Moreover, one of the judgments belongs to the estate, and the trustee would be estopped by his deed, and the other was not entered until after the decree of court for the sale.

3. And what is to hinder the payment of the Veech mortgage by the trustee? Section 6 of the act enacts that the purchase money shall be substituted for the real estate sold, " provided that no principal moneys raised by sale or mort-

gage, as aforesaid, shall be expended for any other purpose than for the payment of liens upon, or the improvement of the same real estate, when mortgaged, or other real estate when held for the same uses and persons." It would be remarkable for a court to hold that the proceeds of this sale could not be applied to the mortgage, if the purchaser should refuse to assume the mortgage as part of his purchase money.

OPINION, MR. JUSTICE GREEN:

If the Orphans' Court had jurisdiction to order the sale of the property in question, the judgment of the court below must be sustained. The property was aquired by will; the petitioner is the trustee appointed by the will, with the equitable title to the entire estate of the testator devised to him. It is alleged in the petition and is undoubtedly the fact that a sale of the particular property described would be to the advantage of the persons interested therein, and the reasons for a private sale are sufficiently set forth in the petition. The more especial purpose of the sale averred in the petition is the necessity of barring or defeating certain contingent remainders. That the application was made by the proper person and to the right court cannot be questioned. It is alleged in the petition, and is not denied, that the property is entirely unproductive and subjects the estate of the testator to an annual expense of about $450 for taxes and interest upon a mortgage which is a lien upon it. There are certain contingent remainders created by the will the mere existence of which would prevent any sale of the property for an adequate price unless they can be defeated by the order of the Orphans' Court; but, as the sixth section of the act of 1853 provides that the purchase money shall be substituted for the land and protects all interests in the land, these remainders are in no peril, but can be amply secured by orders respecting the purchase money. It appears to us there is ample ground for holding that the Orphans' Court had jurisdiction to grant the order of sale and carry it into effect; indeed, the case seems to be one which illustrates well the wisdom of the act of 1853. Objection is made on the ground that as the sale is private and the property is subject to the lien of a first mortgage which is not divested by the sale, it renders the title unmarketable. But as the testator's debts are payable out of

his personalty and the rents and profits of his real estate, and
there is no allegation that these are insufficient for that pur-
pose, and the plaintiff avers that he is ready and willing to pay
off the mortgage and have it satisfied of record, we cannot re-
gard this as a sufficient objection.   The rights of the defend-
ant can be fully protected after judgment and before execution,
by proper orders for the discharge of the mortgage.   The same
is true as to the judgments against two of the persons having
life interests.   The court below has ample power to require
the removal of these liens, if they are a charge upon the land
or the purchase money, before the defendant can be compelled
to pay the judgments.

Judgment affirmed.

Argued October 31, 1888—Decided January 7, 1889.