# Boyle's Estate.

*Guardian and ward—Adoption of ward by guardian—Maintenance—Interest.*

A guardian who legally adopts his ward cannot, on filing his account as guardian, claim credit for the maintenance of the ward during the period in which she lived with him as a member of his family.

In such a case it is immaterial that the father of the child signed a paper to the effect that if anything happened to him "whatever is done with the children," the child in question was to go to the person who subsequently became her guardian and adopted father. An auditor's action in allowing one dollar per week until the ward

## 382 BOYLE'S ESTATE.

arrived at the age of fourteen, cannot be sustained on the theory that if an application had been made, the court would have allowed credit as for past maintenance of the child; and especially is this the case where there is nothing to show that the adopted father could not have supported the child.

A guardian received $26.67 in 1903, $133.34 in 1904 and later in the same year $235.55 and in 1907 the sum of $234.41, making a total of $629.97. The guardian had the funds in his hands until 1914, during which they were uninvested so far as his account showed. *Held,* that he should be charged interest on a fund of $400 for a period of seven years at 6 per cent.

Argued April 19, 1917. Appeal, No. 170, April T., 1917, by Anna Effie Boyle, from decree of O. C. Butler Co., March T., 1916, No. 5, dismissing exceptions to auditor's report in Estate of Anna Effie Boyle. Before OR-LADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREX-LER and WILLIAMS, JJ. Reversed.

Exceptions to report of Levi M. Wise, Esq., auditor.

From the record it appeared that D. W. C. Boyle died on November 15, 1902, leaving to survive him three children, one of whom was Anna Effie Boyle, who was born December 7, 1893, and became of age on December 7, 1914. On February 23, 1903, John L. Young was appointed guardian of the three children of D. W. C. Boyle. On March 24, 1903, he legally adopted Anna Effie Boyle. She thereafter lived with him as a member of his family until 1912. Other facts are stated in the opinion of the Superior Court.

*Errors assigned* were in dismissing exceptions to auditor's report.

*R. P. Scott,* for appellant.—Young was personally liable for the maintenance of his adopted daughter: Presley v. Davis, 62 Am. Dec. 396; Evans v. Pearce, 78 Am. Dec. 635; Guion v. Guion, 57 Am. Dec. 223; Dowell v. Caldwell, 16 Am. Dec. 635.

*W. D. Brandon*, of *Brandon & Brandon*, for appellee. —Where the father of a ward in moderate circumstances is unable wholly to support his daughter and the money had been used so as to inure to the benefit of the ward mere absence of an order of court making an allowance for the support of the ward and the principle that the father was legally bound to support her will not prevent the Orphans' Court from making such allowance on the settlement of the account to prevent the injustice which would follow from surcharging the accountant: Harlan's Account, 5 Rawle 323, at 331; Smith's App., 30 Pa. 397; Strawbridge's App., 5 Wharton 568.

OPINION BY TREXLER, J., July 13, 1917:

John L. Young was appointed guardian of Anna Effie Boyle February 23, 1903, and duly qualified. On March 24, 1903, he presented his petition to adopt his ward which was granted and a decree entered. Before his death, D. W. C. Boyle, the father of Anna Effie, signed a paper as follows: "If anything happens to me whatever is done with the children Effie is to go to Mr. John and Sadie Young." Miss Boyle continued to live with Mr. Young until September, 1912. She then left and sought employment in a private family and when she became of age she cited him to file an account of the moneys he had received by reason of his guardianship. He thereupon filed his account in which he failed to charge himself with any interest on the sums in his hands and asked for a credit at the rate of $1 per week for the support of his ward during the period in which she lived with him as a member of his family. An inspection of the account shows that he received $26.67 in 1903, $133.34 in 1904 and later in the same year $235.55 and in 1907 the sum of $234.41 making a total of $629.97. The items of credit exclusive of the charge for maintenance and the commissions and attorney fees incident to filing the account amount to $162.57. The auditor charged him interest for seven years upon an average balance of $200. Counsel for

the ward claims that he should have charged interest on a much larger sum and this is the basis of the first assignment of error. In Say's Executors v. Barnes, 4 S. & R. 111, the auditor struck a balance at the end of every six months and charged the guardian simple interest on that. TILGHMAN, C. J., in delivering the opinion of the court in sustaining the account of the auditor says, "It does not seem to me, that this rule works either unjustly or severely, whether the case really was, that the money was used by the guardian, or negligently retained by him. How the fact was, we are ignorant. But it must not be forgot that no one but he who had the money, can show what became of it. It is objected that this rule is unjust because it might often happen, that good investments could not be obtained in the course of six months. The answer is fair. Show us that the money was really lying dead, and we give up the interest." This as was pointed out in Dietterich v. Heft, 5 Pa. 87, did not contemplate the compounding of interest. The law makes guardians generally liable for interest on the money which comes into their hands and which they ought to put out: English v. Harvey, 2 Rawle 305. It is the duty of the guardian when he undertakes the trust to put the estate of his ward to the best uses and make interest thereon or show some satisfactory reason why he does not. This is the duty of every guardian and the courts hold him to a strict responsibility in its discharge: King v. Cloud, 7 Pa. 467. In the case before us the guardian has not told us what he did with the money. He evidently used it for his own ends and did not keep it separate and apart for his ward. All the information we have on that subject is in the question of the accountant's attorney directed to the accountant, "Did you receive any other compensation except what you used in appropriating this money? A.—No." The amount received in the first place would probably be too small to admit of investment except in a savings account, but after the receipt of the $235 from the administrator there

was a sum sufficient to invest and this was augmented in 1907 as noted above by an additional sum of $234.41. The old cases allowed him six months in which to make the investment although this is not any longer an invariable rule. He should also be allowed to have some part of the estate as an uninvested fund to provide for contingencies. There was no reason for striking an average. The balance remaining in the hands of the guardian from time to time could have been readily ascertained by the auditor, and although the account fails to give the time at which the various items of credit were expended, the vouchers themselves were presented at the audit and showed the dates of the several credits. We think interest on the sum of $400 should be charged against the guardian for a period of seven years at six per cent. instead of on $200. This would increase the debit side of the account to the extent of $84. This is probably giving the guardian more than he should have. He should have shown definitely whether the funds were invested or not, and if the funds were uninvested given reasons why such a condition existed. As no such explanation was made we are left to do the best with the account as it is presented.

The second assignment is directed to the item of $1 per week charged by the guardian for maintenance of his ward "as per arrangement with her father" amounting to $528. Evidently the arrangement with the father refers to the paper signed by the father shortly before his death and quoted above and to some declaration of the father that Mr. Young was not expected to keep his child without being paid for it. We attach no importance to the paper or the statement. When Young adopted Miss Boyle he took the place of a parent and they sustained to each other reciprocal duties of father and child. Among these duties was that of maintenance and support. Thus in Shuey's Est., 1 Pa. Superior Ct. 405, it was held that where one placed himself in loco parentis with reference to his ward he could not legally

charge her estate with any compensation for her board and clothing. So in Horton's App., 94 Pa. 62, where a guardian put his ward into his own family and regarded her as one of his children and so stated and never applied to the court for an allowance for her support nor made any charge in his books for her maintenance, it was held that he was not entitled to a credit for her maintenance. In neither of these cases had the ward been adopted by the guardian. Where the guardian by the act of adoption assumes the obligation of parent to child, his duty of maintenance is more apparent than where the mutual status is formed by a course of conduct. The auditor came to the conclusion that he should be allowed $1 per week until the ward arrived at the age of fourteen. He comes to that conclusion for the reason that in his view, the court, had application been made, would have allowed credit for the maintenance of the child and that the case before him was to be regarded in the nature of an application to the Orphans' Court for past maintenance. We do not think that an auditor in passing on the items of an account can regard the matter in the same nature as a petition for past maintenance or that he has anything to do with that phase of the question, but assuming arguendo that he has, there is nothing on the record which would induce the court to make such an order in this case. The reason for such order would be the inability of the parent to support the child. We have the testimony that the adoptive parent had a farm of sixty-four acres and that upon it there is an encumbrance of thirteen or fourteen hundred dollars. What the value of the land is we do not know and as to what the productive value of the same was we are equally in the dark. The auditor admits that the case is difficult. He seems to attach some importance to the paper signed by the father of the ward and given to Mr. Young and comments on the fact that in Shuey's Est., supra, there was no such feature appearing. When Mr. Young assumed the duties of an adoptive parent, whatever virtue

381, (1917).]          Opinion of the Court.

there was in that paper so far as his claim is concerned, ceased to have any existence. Some reference is made to the fact that he assumed the guardianship under a mistaken idea. He cannot take advantage of his ignorance in this respect. We think there is nothing in the case that justifies any claim for maintenance of this child. Therefore the item of $282 contained in the restated account is disallowed.

The decree of the Orphans' Court is reversed and the record is remitted with instructions that the account of the guardian be restated in accordance to this opinion.