Opinion by
 

 Baldrige, J.,
 

 These two appeals, which were argued together and will be disposed of in one opinion, are from the decree of the .Orphans’ Court of Beaver County, surcharging the Beaver Trust Company, trustee under the will of Emma C. D. Campbell, deceased, in the sum of $1578.13 for failure to use due diligence in .handling a certain mortgage in which Sarella A. Campbell White had one-half interest, and the additional sum of $171.10 for excess commissions claimed.
 

 The trust company in its appeal No. 183 April Term, 1941 contends that it should not be surcharged in any amount, and Sarella A. Campbell White in her appeal filed to No. 221 April Term, ¡1941 claims that the surcharge was insufficient. The testimony taken in this proceeding was by depositions before a notary public, and by agreement of the parties they were submitted to the lower court. President Judge Reader, after argument, .entered ¡the decree which was the basis iof these appeals.
 

 Emma C. D. Campbell died February 13, 1933, leav
 
 *547
 
 ing a will in which she devised and bequeathed all her real estate and personal property to the “Beaver Trust Company of Beaver, Pennsylvania in trust for the following uses and purposes: All such property and personalty shall be kept invested in appropriate mortgages, stocks and securities and the net income thereof paid semi-annually or yearly at the convenience of said Trustee, share and share alike, to my son, George H. Campbell, and to my daughter, Sarella A. Campbell, until each shall have attained the age of thirty-five years, and when each of my said children shall attain said age of thirty-five years, said trust shall terminate as to him or her and said trustee shall forthwith pay to such child the one-half part of said trust fund, including the increase, accretions and interest accruing on said one-half part.”
 

 Included in the assets of the estate was a mortgage covering a certain property in the borough of Aliquippa in Beaver County, given on July 1,1925 by Harry Gastfriend to George Jeffreys to secure the sum of $10,000 payable three years from date. Payment thereof was extended twice by the original mortgagee, and under the last extension the principal sum was due and payable on July 31, 1931. The mortgage ,was assigned on June 12, 1931 to .Emma C. D. Campbell, the testatrix. Clinton I). Campbell, executor of the decedent’s will, assigned it to the trust company as trustee in February 1934 when the estate was settled. The trust company accepted the .trust under the terms of the agreement dated January 27, 1934, limiting its liability to the amount “which it shall realize on the said assets agreed to be accepted in kind.”
 

 Mrs. White reached the age of 35 years on August 12, 1939 and an account was filed by the trustee on August 17,1939, showing assets in its hands of $7151.58, consisting of $2151.58 in cash and a one-half interest in the Gastfriend mortgage valued at $5000. Numerous exceptions were filed thereto by Mrs. White, but we are
 
 *548
 
 concerned in the present controversy with only two. The first is to the credit claimed of $5000 on account of the Gastfriend mortgage, and the second is to commissions claimed by the accountant.
 

 It was the contention of the exceptant that the security in question is worthless as the mortgaged property could not be sold for more than $4000 or $5000, and that against it ,on December 6, 1939, there were delinquent taxes of $4739.89; that the loss in this security was due to the supine negligence of the trustee.
 

 In 1934 when the mortgage was assigned to the trustee the taxes against the mortgaged property were delinquent from 1930, aggregating $1571, and on the date the account was filed they had increased to almost $5000. There was evidence that the property decreased in value owing to the abandonment of a bridge leading to the Jones and Laughlin Steel Corporation plant, .which was removed in 1928, and to the general depressed business conditions which followed later. The proof offered upon the part of the except-ant .to the trustee’s account was that the mortgaged property in 1934 had a .market value of between $6000 and $7500 and that there was no considerable decline until about 1937 when it had a market value of but from $4000 to $4500. The witnesses called by the accountant claimed that the fair value of the property in 1934 was only $5000.
 

 The court found the value of the property in 1934 was $6000, and that it remained unchanged until the beginning of 1937, and held that while the trustee was entitled to a reasonable opportunity to determine an advantageous time to realize on the mortgage security, it (should have ;been sold by 1936 w^erl the sum of $6000 could have been obtained at a foreclosure -sale. The delinquent taxes then amounted to $2593.73 and the sum of $250 was fixed as a reasonable allowance for the costs of .foreclosure. Deducting these amounts from the market price it would have left the sum of
 
 *549
 
 $3156.27 for the estate. One-half of this, $1578.13, would be payable to the present exceptant. The trustee was accordingly surcharged with that amount.
 

 The principal question before us is: Did the circumstances warrant the conclusion reached by the .court below that the trustee was not sufficiently diligent in the handling of the mortgage security?
 

 The exceptant’s testimony shows that the trustee never had the property appraised; and despite the fact it was located in a neighborhood where real estate was depreciating in value, that the taxes were unpaid and accruing, the trustee demanded nothing of the mortgagor except payments of interest.
 

 Mr. George Campbell testified that he called at the bank in May 1939 and inquired whether the taxes on the mortgaged premises were being kept paid. The trust officer told him that he did not know, but that their records indicated that they had not been paid from 1933 to 1935, and that he had no information concerning the taxes of prior years. Campbell insisted that the trust officer go with him to see the property and then learned from the officer’s own admission that he did not know its location. The accountant contends that foreclosure proceedings, owing to market conditions, would have been futile; costs, which it had no funds to pay, would have been incurred, and a forced sale would have resulted in its having possession of an unproductive property. It takes the further position that under the agreement referred to it was only liable for the amount it realized.
 

 Mr. McIntyre, who had charge of the trust department in 1936, .in answer to an inquiry whether the increasing delinquent taxes should not have been considered in determining whether some action should have been taken, either to acquire the property or dispose of it, replied: “Well, I don’t think we were obliged to do that under our agreement, no.”
 

 We agree with the learned court below that “the
 
 *550
 
 purpose of the agreement was to protect the trustee against any assumption of liability for the full face value of the securities taken over in kind. Having taken the securities it was bound to use common skill, common prudence, and common ¡caution ,in the administration and collection of ,the securities, being liable, however, for supine negligence or wilful default.” See
 
 Drueding et al. v. Tradesmens National Bank and Trust Co.,
 
 319 Pa. 144, 179 A. 229; and 3 Bogert, Trusts and Trustees, §592.
 

 In section 174 of the Restatement of the Law of Trusts it is stated: “The trustee is under a duty to the beneficiary in administering the trust to exercise such care .and skill as a man of ordinary prudence would exercise in dealing with his own property; and if the trustee has greater skill than that of a man of ordinary prudence, he is under a duty to exercise such skill as he has.” See, also,
 
 Kline’s Estate,
 
 280 Pa. 41, 45, 46, 124 A. 280.
 

 We realize that a trustee is not required to anticipate market conditions or to have infallible judgment in handling securities. That is demanding too much. He is to be judged by the conditions confronting him in solving the particular problems governing the trust administration. While we have referred to the general rule applicable to trusts, the duty imposed upon the trustee by law depends upon the facts in each particular case. There is no standardized or inflexible rule that can be applied in all circumstances to determine the exact responsibility under various conditions. A trustee is not relieved, however, from exercising reasonable care ,and skill to protect and preserve trust property: Restatement of the Law of Trusts, §176. The evidence warrants the conclusion reached by the learned court below that the trustee was guilty .of supine negligence in failing to exercise due diligence in the handling of this mortgage security.
 

 Under the facts disclosed by the record the ruling
 
 *551
 
 of the court below on the matter of commissions does not appear to be inequitable and we are not disposed to interfere with its discretion as exercised in this regard. “In the absence of statute it lies within the discretion of the court having jurisdiction over the accounting and the approval of compensation to decide whether the conduct of the trustee deserves normal, reduced, or no compensation.” 4 Bogert, Trusts and Trustees, §979. See, also,
 
 Henry’s Estate,
 
 341 Pa. 439, 440, 447, 19 A. 2d 66.
 

 The decree of the learned court below is affirmed jn each appeal, at the costs of the respective appellants.