## Calhoun's Estate.

6 w 185
165 ▼ 336

6 w 185
182 410

Executors who act with ordinary diligence and attention, are not liable for a loss of the funds of the estate; nor are they liable for the mismanagement or insolvency of their agents, which they could neither foresee nor control.

APPEAL by John Buchanan and Hugh M'Culloch, executors of William Calhoun, deceased, from the decree of the orphans' court of Lancaster county, upon the settlement of their administration account.

The court below (Collins, president) being of opinion that the accountants should be charged with the amount of the judgment against the Gochenaurs, which was lost, thus fully stated the facts, in order to afford them an opportunity to review their opinion in the supreme court.

It is contended on the part of the legatees, that the accountants should have charged themselves with the sum of 2103 dollars 33 cents, with the interest thereon, from 22d June 1822, being the amount of a judgment recovered by said accountants as executors of testator, against Adam Gochenaur and Abraham Gochenaur, in the district court for the city and county of Lancaster, originally brought to June term 1822, No. 51, and revived by *scire facias* to September 1824, No. 28. The amount of which, it is alleged, was received by their accountants, or their attorney, or lost by the negligence of the accountants.

The facts relied upon by the legatees to sustain these exceptions are, that on the 22d of June 1822, William Calhoun, deceased, the accountants' testator, obtained judgment against the aforesaid Adam and Abraham Gochenaur, for 2103 dollars 33 cents, with interest, and that the real estate of each, was sufficient to secure the amount of the judgment. That on the 26th of July 1824, John Buchanan and Hugh M'Culloch, the accountants, were substituted as plaintiffs in said judgment, and issued a *scire facias* to revive it to September term 1824, No. 8, on which judgment was rendered the 13th of September 1824, for the original judgment and interest. On this judgment a *fieri facias* issued to December term, No. 8, which was returned by the sheriff, "the property of Adam Gochenaur levied and condemned." (See *fieri facias* to January term 1825.) An *alias fieri facias* was issued to September term 1826, No. 32,

VI.—Y

which was returned, "levied on three tracts of land, &c., one of eighty-eight acres and one of ninety-three acres, in Conestogo township, and one of seventy-eight acres in Martic township, as the property of Abraham Gochenaur, and condemned." This latter property, it is proved, and also admitted, was abundantly sufficient to secure the payment of the aforesaid judgment. On this judgment no further proceedings appear until the 30th of August 1830. Then the accountants issue their *scire facias* to September term 1830, for the purpose of reviving the said judgment against Abraham Gochenaur, who survived Adam Gochenaur, and to this action of *scire facias*, the defendant entered a plea of payment, with leave; and thus the matter rests.

It is also shown, that one John Good had employed Ebenezer Wright, an attorney of respectable standing at the bar of Lancaster county, to bring suit against Adam Gochenaur (one of the defendants in the said judgment) and others, to February term 1821, No. 18; and on the 10th of May 1822, said John Good, obtained an award of arbitrators for 2336 dollars 85 cents. From this award, the defendants appealed, and on the 15th of September 1824, the plaintiff, John Good, obtained a verdict for 2578 dollars 60 cents. The defendant took a writ of error to the supreme court, to May term 1825, No. 38, on which the judgment was reversed on the 17th of June 1826; and on the 4th day of March 1829, a verdict was rendered for the defendants; to this, also, a writ of error was taken, but what disposition was made of it, does not appear. It has been shown, that William Calhoun, in his lifetime, employed the before-named E. Wright, as counsel, to collect his debt against Abraham and Adam Gochenaur, and that the accountants, after they took upon them the administration, continued that employment. Of April term 1825, No. 50, a *venditioni exponas* issued at the suit of Abraham Shaub's administrators *v.* Adam Gochenaur, under which, in November 1825, his real estate was sold by the sheriff for 2709 dollars. A deed was executed by the sheriff to the purchaser, who paid the money to the sheriff on the 17th of April 1826. And by the letter of William White, late sheriff of Lancaster county, which has been permitted to be read in evidence by the counsel, for the purpose of the present argument, but nothing further, it appears, as he says, upon examining his papers, that Gochenaur's property was sold in November 1825, for 2709 dollars; and that in the month of April following, the money was paid to Mr Wright, the attorney. It is also made to appear that, at the time of the sale of the aforesaid property, the judgments of Good and Calhoun's executors were the earliest liens upon the real estate of Adam Gochenaur. At this time, and for some years after, it is conceded on all hands, as well as proved, that the judgment of Calhoun's executors, if unpaid to the accountant's attorney, was well secured by the property of Abraham Gochenaur, or by the sheriff and his bondsmen, if he received the money and misapplied it, or

[Calhoun's Estate.]

by these three several funds, that is to say, by the estate of Adam Gochenaur, by that of Abraham Gochenaur, and by the sheriff's sureties in case of default. It further appears, that in 1833, Abraham Gochenaur made an assignment of his property to Jacob Eshleman for the benefit of his creditors, that his property was sold by his trustees, his debts paid, and a surplus of three or four thousand dollars returned to said Gochenaur. In March 1830, the lien of the judgment (if still unpaid) against the estate of Abraham Gochenaur, expired; about the same period, the liability of the sheriff's sureties, for his default in this case ceased, and in April 1829, the counsel of accountants, Mr Wright, died insolvent. And it is not denied by the accountants that the judgment of 2103 dollars 33 cents, with interest obtained by their testator on the 22d of June 1822, from that time charged upon two ample funds or estates to secure its payment, has been lost to the estate.

They deny, however, that it has been lost by any default of theirs, and rely upon the following facts in addition to those before referred to, for the purpose of showing that they are not liable to account for it. They show, that William Calhoun, their testator, originally retained the said Wright as his counsel, to bring suit and recover this debt of 2103 dollars 33 cents, from Abraham and Adam Gochenaur, and that after the decease of the said testator, the accountants employed the same counsel to issue a *scire facias* to revive the judgment and proceed in the collection of the money; and that the said Wright, in 1824, as counsel, was in good credit and doing a fair business, that he proceeded in the matter as their counsel, and if William White's letter is believed, received in the month of April 1826, the proceeds of the sale of Adam Gochenaur's real estate, either as the counsel of John Good, who had recovered a judgment which has been mentioned, or as the counsel of accountants, or of Good and accountants, or as it may appear from all the evidence, as the depository of the sheriff, William White, until a legal application of the money should be made by the proper tribunal. It appears by the deposition of John Good taken by the accountants, that he, Good, supposed the money continued in the hands of the sheriff, as Wright, the attorney, told him it should not be paid over to either, until it was fairly decided who was entitled to it; and the accountants, it appears, knew that Wright was also the attorney of Good. A. B. Kauffman, whose deposition has been taken by the accountants, states, that in the year 1824, the standing of Mr Wright as an attorney, was pretty fair, and for two years subsequently; that afterwards, he began to fall off, and neglected his business, that he died in 1829, insolvent, that his estate was not sufficient to pay the judgments against him, that deponent is his administrator, and has no knowledge whether his decedent received the money, the proceeds of Gochenaur's estate or not, and that accountants never requested deponent to search the papers of decedent for the ascertainment of that fact.

By the deposition of James B. Long, on the part of accountants, it appears, that some time after the sale of Gochenaur's property by the sheriff, about the 1st of June, of some subsequent year, John Buchanan, one of the accountants, in company with James B. Long, went to Mr Wright's office, and inquired about the money raised by the sale of Gochenaur's property, and that Wright told him it was attached in the sheriff's hands by John Good, and that as soon as that was settled, the money could be had, and he would attend to it with pleasure. That in the following winter, Buchanan, one of the accountants, again met Mr Wright at Mr Jenkins's office, but he did not hear the conversation that passed between them. It appears also, that after the death of Mr Wright, the accountants employed Mr. Washington Hopkins, since deceased, as their counsel. The exceptants have further shown by the depositions of John Good and Henry Brenneman, that before the money was paid to the sheriff for the price of Gochenaur's property, the accountants met Good and Brenneman, the latter of whom was the principal purchaser; that after the sale made, it was desired by Good that the purchase money should not be paid by the purchaser until it should be ascertained whether Good's judgment, or that of accountants would receive it; and the purchaser, Brenneman, offered Good to the accountants as security for the money. This proposition they rejected, and insisted on the payment of the money to the sheriff, which was done.

*Franklin* and *Champneys*, for appellants, cited 1 *Vez. Jun.* 190; *Amb.* 218; 4 *Johns. Ch.* 619; 4 *Rawle* 148; 1 *Penns. Rep.* 188, 207; 10 *Law. Lib.* 79, 167; 2 *Mad. Ch.* 113; 11 *Serg. & Rawle* 71; 1 *Vez.* 144; 1 *Penns. Rep.* 202; 1 *Atk.* 507.

*Reigart*, for appellees, relied upon the facts of the case as exhibiting gross negligence on the part of the executors, in consequence of which the money was lost.

The opinion of the Court was delivered by

ROGERS, J.—It is a general principle, that whenever trustees fail in the peformance of their duty, or exceed, or pervert the power with which they are invested, they and their representatives, whether deriving any benefit from it or not, become responsible to those for whom the trust property should be held; and are chargeable in equity for breach of trust. But it is not for every act of neglect that they are responsible. Thus, executors and administrators, or trustees, acting with good faith, and without any wilful default, or fraud, will not be responsible for any loss that may arise. All that a court of equity requires from trustees, is common skill, common prudence, and common caution. Executors, administrators, or guardians, are not liable, beyond what they *actually* receive, unless in case of gross negligence; for when they act as others do

[Calhoun's v. Estate.]

with their own goods, and with good faith, and not guilty of gross negligence, they are not liable. 1 *Penns. Rep.* 213. Theenigmote, appellant, *v.* Thimnell, assignee; Thompson *v.* Brown, Fay and others, 4 *Johns. Cha. Rep.* 619. A court of equity, as is said in Thompson *v.* Brown, always treated trustees acting in good faith, with great tenderness. In Knight *v.* The Earl of Plymouth, 3 *Atk.* 480, *Dicken's* 120, Lord Hardwicke observes, if there was no *mala fides*, nothing wilful in the conduct of the trustee, the court will always favour him. For as a trust is an affair necessary in the concerns between man and man, and which, if faithfully discharged, is attended with no small degree of trouble and anxiety, it is an act of great kindness in any one to accept of it. To add hazard or risk to that trouble, and to subject a trustee to losses which he could not foresee, would be a manifest hardship, and would be deterring every one from accepting so necessary an office. In that case, a receiver had deposited money with a banker of good credit, who afterwards failed, and as he was not chargeable with any wilful neglect or fraud, the court refused to hold him responsible for the loss of it. In Routh *v.* Howell, 3 *Ves.* 567, the same point was ruled. Executors were discharged from liability, for a loss arising from the insolvency of a banker, whom the testator had trusted, and with whom they suffered stock, deposited by the testator, to remain. This principle has an exceedingly strong bearing on the case in hand, as well as Wilkinson *v.* Stafford, 1 *Ves. Jun.* 41, and Van *v.* Emery, 5 *Ves.* 144, where the court of chancery determine to relieve trustees, acting upon professional advice, with the best judgment they could form, from losses of the heir's property. The facts of this case are directly within the principles, which have been ruled in the cases cited, all of which have been distinctly recognised by this court. It is not pretended but that the executors acted with good faith. Fraud is not even alleged; and nothing has been found, which shows a want of common skill, common prudence, or common caution; or differs their conduct from what is usually manifested in conducting our own affairs. They reposed confidence, where the testator had reposed it; for it must not be forgotten that Mr Wright was the counsel selected by the testator himself. The executors acted with professional advice, and we have it in proof that they called, at least twice, on their attorney, and how much oftener, it may be impossible to show, to inquire the state of the business, and were informed by him that the money was attached in the sheriff's hands, and that as soon as it could be had, he would attend to it. I cannot perceive the force of the objection, that, when an offer was made by the purchaser of Gochenaur's property, to let the money remain secured in the hands of the purchaser, until Good's right to it should be ascertained, they rejected the proposition, and insisted on the money being paid to the sheriff. This was in the due course of law, and so far from this being a reason for charging

[Calhoun's Estate.]

them, a contrary course would have rendered them responsible to the legal representatives. It is true, they knew the money was in the hands of the sheriff, and it is equally true, that they had placed the business under the care and management of an attorney, whose skill and integrity they had not the slightest reason to distrust, who, in addition, had been selected by the testator himself. It may be safely said, that few clients, whether acting for themselves or others, but would at that time have reposed a similar confidence in the honour and integrity of the counsel who was employed; and nothing had occurred, of which we have any evidence, which was calculated to awaken suspicion as to his skill and diligence. The executors reposed merely the usual confidence in him, and for this, we think it would show unwarrantable rigour, to subject them to the loss of assets which were never in their hands, nor subject to their control. If the testimony is believed, (and we have the positive testimony of the sheriff, to the fact) the money was lost in consequence of the insolvency of the attorney; who, at the time, was in good standing and credit, and of whose actual situation the executors were not informed. Nor can it affect the liability of the executors, whether Mr Wright received the money or not, nor in what capacity he received it, as they had a right to repose confidence in his skill. The money was lost by his misconduct, and the cases cited show, that trustees who act with good faith, are not liable for such mismanagement of their agents, as they can neither foresee, nor control. We are, therefore, of the opinion, that gross negligence has not been shown, and that the court erred in charging the executors with 2103 dollars and 33 cents and interest, the amount of the judgment against Adam and Abraham Gochenaur. With this correction, the account is confirmed.

The decree reversed, so far as concerns the sum of 2103 dollars and 33 cents, and confirmed as to the residue.