## Springer's Estate.

*Decedents' estates—Executors and administrators—Wills—Joint will—Surcharge—Failure to file account—Commissions.*

Three unmarried and childless sisters made a will providing in part as follows: "We hereby order and direct that at the death of the one of us who shall first depart this life, all the property of every kind whatsoever of which she shall die seized, or to which she shall be entitled at the time of her decease, real, personal or mixed, and whether owned by her individually or jointly or as tenant in common with the other two of us, shall pass to and become vested absolutely in the survivors of us, and the two survivors shall pay all her just debts and funeral expenses. At the decease of the one who shall next depart this life, all her estate of every kind whatsoever of which she shall die seized, or to which she shall be entitled at the time of her decease, whether owned by her, individually, or jointly, or as tenant in common with the other sur-

vivor, and including what she shall acquire under this will as her share of the estate of the one of us who first died, shall pass to and become vested, absolutely, in the last survivor, and the last survivor shall pay all debts and funeral expenses then unpaid of the two who have previously died. We further order and direct that this will shall not be probated, unless necessary to determine the title of property herein disposed of, nor shall any appraisement, whatever, except for collateral inheritance tax, be made of any or either of our estates, until after the decease of the last survivor of the three of us, but that all our respective estates shall pass to and become vested in the survivors in kind as they shall be at the time of our respective deaths." After the death of the last surviving sister the executor under the will filed an account for her estate. Certain of the residuary legatees filed exceptions asking that the executor be surcharged for failure to convert assets and securities belonging to the estates of the two sisters who first died and to account for the same, that he be surcharged for failure to include certain notes belonging to the said estates, and that the executor's commissions be disallowed. The Orphans' Court refused to surcharge the executor and allowed the commissions. *Held,* no error.

Argued May 7, 1917. Appeal, No. 141, Jan. T., 1917, by George S. Rizer, Benjamin H. Rizer, Albert A. Rizer, Mary F. Rizer and Florence M. Kunst, by G. H. A. Kunst, their attorney in fact, from order of O. C. Fayette Co., June Court, 1916, No. 53, dismissing exceptions to adjudication in Estate of Elizabeth B. Springer, deceased. Before BROWN, C. J., MESTREZAT, STEWART, FRAZER and WALLING, JJ. Affirmed.

Exceptions to adjudication. Before WORK, P. J.

The opinion of the Supreme Court states the case.

The court dismissed the exceptions to the adjudication. George S. Rizer et al. appealed.

*Errors assigned,* inter alia, were in dismissing the exceptions, the refusal of the court to surcharge the executor for failure to make annual statements, for failure to charge himself with interest, for failure to charge himself with promissory notes given by J. V. Thompson and not collected, and in allowing executor commissions.

*John L. Hechmer,* of the West Virginia Bar, with him *H. S. Dumbauld,* for appellants.

*A. E. Jones,* with him *D. W. Henderson,* for appellee.

PER CURIAM, June 30, 1917:

Mary Ann Springer, Elizabeth B. Springer and Sarah J. Springer were unmarried and childless sisters, who, in April, 1900, made a will, the material portion of which on this appeal is as follows: "We, Mary Ann Springer, Elizabeth B. Springer and Sarah J. Springer, sisters, all of North Union Township, Fayette County, Pennsylvania, do hereby make and publish this our and each of our last will and testament, as follows: We hereby order and direct that at the death of the one of us who shall first depart this life, all the property of every kind whatsoever of which she shall die seized, or to which she shall be entitled at the time of her decease, real, personal or mixed, and whether owned by her individually or jointly or as tenant in common with the other two of us, shall pass to and become vested absolutely in the survivors of us, and the two survivors shall pay all her just debts and funeral expenses. At the decease of the one who shall next depart this life, all her estate of every kind whatsoever of which she shall die seized, or to which she shall be entitled at the time of her decease, whether owned by her, individually, or jointly, or as tenant in common with the other survivor, and including what she shall acquire under this will as her share of the estate of the one of us who first died, shall pass to and become vested, absolutely, in the last survivor, and the last survivor shall pay all debts and funeral expenses then unpaid of the two who have previously died. We further order and direct that this will shall not be probated, unless necessary to determine the title of property herein disposed of, nor shall any appraisement, whatever, except for collateral inheritance tax, be made of any or either of our estates, until after the decease of the last survivor of the

three of us, but that all our respective estates shall pass to and become vested in the survivors in kind as they shall be at the time of our respective deaths. At the decease of the last survivor of the three of us, we dispose of all our property, real, personal or mixed which shall then remain as follows: We direct our executor hereinafter named, as soon as he deems it advisable so to do, to sell all our personal estate at public sale, and our real estate, except as hereinafter provided, at either public or private sale, as he may deem best, and to distribute the proceeds thereof as follows":

Mary died December 19, 1906; Sarah, October 3, 1907, and Elizabeth, June 28, 1913. Upon the death of each of these sisters their will was admitted to probate and letters testamentary issued to D. M. Hertzog, the appellee, as executor. This appeal is from the refusal of the court below to surcharge him and to the allowance of commissions.

In asking that the appellee be surcharged for his failure to convert the assets and securities belonging to the estates of the two sisters who first died, and to account for the same, the appellants overlook the provisions in the will by which each sister gave to the survivors "in kind" all of the property of every kind whatsoever of which she died seized, or to which she was entitled at the time of her decease, real, personal or mixed, and whether owned by her individually or jointly, or as tenant in common with the other two, to become vested absolutely in the survivors; and this was followed by a direction to the executor that no "appraisement, whatever, except for collateral inheritance tax," should be made of the estates of the two who died first. The estates of Mary and Sarah, who died first, are not involved in the settlement of Elizabeth's estate, it not appearing that anything to which she was entitled out of the estate of her two sisters had been withheld from her by the appellee. The will clearly contemplated the settlement of but one estate, and the appellee has in-

cluded in the settlement of that estate—Elizabeth's, who was the "last survivor"—all that she had acquired from any source. In the settlement of her estate has he done anything, or omitted to do anything, he ought to have done, which makes him liable to surcharge or calls for a forfeit of his commissions?

After a review of all the evidence in the case we concur in the conclusion of the learned court below, that the appellee, as executor, exercised common skill, common prudence and common caution in the settlement of Elizabeth's estate, and approve the following from the opinion dismissing the exceptions to his account: "At the audit twelve witnesses, nine of whom were leading members of the bar, testified that Mr. Thompson's reputation financially as a safe person and one in whom trust and confidence could be reposed up until the time of his failure was very good; that he was trusted generally by the people; that his financial standing was not questioned until about the time of his failure. And that the executor's reputation as a good, safe business man was very good, and that his standing as a member of this bar was very good. The testimony further shows that no suits were entered against Mr. Thompson before December, 1914, and that the executor handled the estate's claims in the same manner and with the same skill and judgment that he handled other claims placed in his hands for collection and pursued the same general course that all the other members of this bar pursued. We think the course pursued by the executor would have been approved by the testatrix had she been living: McNair's App., 4 Rawle 148." To the foregoing it may be properly added that from the records of this court it is manifest that any effort on the part of the appellee to recover from J. V. Thompson would have been unavailing.

Under an unbroken line of cases from Calhoun's Est., 6 Watts 185, down to Skeer's Est., 236 Pa. 404, the decree of the court below was a proper one, and the appeal from it is dismissed at the costs of the appellants.