# Kline's Estate.

*Trusts and trustees—Negligence—Gross negligence—Surcharge—Duty to collect estate from executor—Interest—Compensation—Attorney's fees—Costs of audit.*

1. A trustee is required to exercise common skill, common prudence and common caution, and is not liable when he acts in good faith as others do with their own property; but he is liable for gross or supine negligence, or wilful default.

2. The first duty of a trustee, after his appointment and qualification, is to secure the possession of the trust property and to protect it from loss and injury.

3. Unnecessary delay in securing possession of trust property is at the personal risk of the trustee.

4. Where a trust company is created by will a trustee with active duties to perform, and delays for four years in taking any steps to compel the executor to account or to pay over the estate to the trustee, and the executor sells the estate within a year after the testator's death, embezzles the proceeds, and dies insolvent, before the trustees take any steps, although it has knowledge that the executor is financially embarrassed, the trustee is guilty of gross negligence, and will be surcharged with the loss.

5. The fact that the executor was given discretion as to when he should sell the property is unimportant, inasmuch as he actually sold it within the year, and was given no discretion as to when he should turn over the proceeds.

6. Nor does the fact that the executor was a reputable attorney, excuse the trustee's failure to take steps to secure the trust property, where it appears the executor is not the attorney of the trustee.

7. Reasonable probability that timely action would have averted the loss is all that is required to establish liability on the part of the trustee.

8. In such case, the trustee will be surcharged with interest on the fund lost, and will be deprived of compensation for its services, nor will he be allowed attorney's fees before the auditor.

9. When the audit is made necessary by the fault of the trustee, the latter and not the estate must bear the cost thereof.

Argued February 4, 1924. Appeals, Nos. 61 and 144, Jan. T., 1924, by Anna J. Kline et al., legatees, from decree of O. C. Lehigh Co., File No. 13665, dismissing ex-

ceptions to auditor's report, in estate of David R. Kline. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, SADLER and SCHAFFER, JJ. Reversed.

Exceptions to report of auditor. Before RENO, J.

The opinion of the Supreme Court states the facts.

Exceptions dismissed. Anna J. Kline et al., legatees, appealed.

*Error assigned* was, inter alia, decree, quoting it.

*W. C. Miller,* of *Miller & Hartswick,* and *F. H. Ely,* of *Ely & Ely,* with them *Calvin E. Arner,* for appellants.— It was the duty of the trustee to collect the trust estate from the executor, to compel an accounting and transfer of the estate and to take such action as the law provided for, compelling such accounting and transfer at the earliest possible time when the executor was liable to account and pay over the estate: Webb's Est., 165 Pa. 330; Carr's Est., 24 Pa. Superior Ct. 369; Chambersburg Saving Fund Assn. App., 76 Pa. 203; Skeer's Est., 236 Pa. 404; Stong's Est., 160 Pa. 13; Tenth Nat. Bank v. Smith Construction Co., 242 Pa. 269; Hart's Est., 203 Pa. 480.

Executors, administrators and trustees must act in good faith, without any wilful default or fraud, and they must bring to the discharge of their duties the exercise of that common skill, common prudence and common caution which a man of ordinary prudence and care would practice in his own business: Webb's Est., 165 Pa. 330; Bartoll's Est., 182 Pa. 407; Semple's Est., 189 Pa. 385; Skeer's Est., 236 Pa. 404; Wood's Est., 272 Pa. 8; Taylor's Est., 277 Pa. 518; Cody v. Venzie, 263 Pa. 541.

If it be made out to a reasonable probability that a debt has been lost by the neglect of a trustee, he is responsible: Pim v. Downing, 11 S. & R. 65; Long's Est., 6 Watts 46; Will's App., 22 Pa. 325; Finney's App., 37

Pa. 323; Shaffer's App., 46 Pa. 131; Mansfield's Est., 19 Pa. Superior Ct. 26; Johnston's Est., 9 W. & S. 107; Charlton's App., 34 Pa. 473; Seidman's Est., 261 Pa. 540.

*L. H. Rupp*, of *Butz & Rupp*, for appellee.—Since the rule of care required of trustees is common skill, common prudence and common caution, trustees can only be held personally liable for gross and supine negligence or for wilful default: Chambersburg Saving Fund Assn. App., 76 Pa. 203.

OPINION BY MR. JUSTICE WALLING, March 10, 1924:

David R. Kline, a resident of Allentown, died September 22, 1912, testate. Items first, second and third of his will dispose of $600, his library and chime clock; items fourth and fifth are as follows:

"Fourth. All the rest, residue, and remainder of my estate, real, personal and mixed, of whatsoever kind and wheresoever the same may be, I give, devise and bequeath unto the Lehigh Valley Trust Company, of the City of Allentown, Penna., to be held in trust by it and the income therefrom to be paid unto my wife, Clara Maria Kline, during her natural life and, upon her decease, the principal of my said residuary estate shall be distributed in equal shares among my two daughters, and their heirs. The said Lehigh Valley Trust Company as trustee shall have full power to invest and reinvest the principal of my estate in such securities as it may deem wise and shall in all respects do in the premises as I might or could do if living."

"Fifth. I nominate and appoint Frank Jacobs, of the City of Allentown, Pennsylvania, as the executor of this my will, with full power and authority to sell, convey, and convert my real, personal and mixed property at such prices and at such times as may seem best to my executor and he is hereby given full authority to execute and deliver deeds for any or all of my real estate to the

purchaser or purchasers thereof either at public or private sale."

Mr. Jacobs promptly qualified as executor and took possession of the personal estate, appraised at $33,-759.12, and of real estate from which he realized $12,-552.24, net. He continued to act in that capacity until his death in September, 1916, but filed no account. The Lehigh Valley Trust Company (herein called the trustee) accepted the trust and in 1913 and 1914 received from the executor approximately $7,000, but nothing from him thereafter. Mr. Jacobs was a practicing member of the Lehigh County Bar in good standing, with an annual income from his profession of at least eight or ten thousand dollars. His estate, however, proved utterly insolvent and paid only about six per cent of his liabilities, which latter included a large sum due the Kline estate for misappropriation of its funds. Testator's widow died in June, 1920, and his two daughters thereafter took proceedings in the orphans' court to surcharge the trustee with the loss caused by the defalcation of the executor, on the contention that such loss resulted from the trustee's supine neglect. The auditor, rejecting this contention, reported the trustee blameless, and, from the decree of the orphans' court dismissing exceptions to such report, the daughters brought these appeals.

The decree cannot be sustained. There is no dispute as to the facts, but we differ from the auditor and orphans' court as to the inferences and legal conclusions deducible therefrom. A trustee is required to exercise common skill, common prudence and common caution and is not liable when he acts in good faith as others do with their own property (Detre's Est., 273 Pa. 341, 350; Wood's Est., 272 Pa. 8; Semple's Est., 189 Pa. 385; Neff's Est., 57 Pa. 96), but he is liable for gross or supine negligence, or wilful default; Bartol's Est., 182 Pa. 407; Chambersburg v. Saving Fund Association's App., 76 Pa. 203; Neff's App., supra. Hart's Est. (No. 1), 203

Pa. 480, as summarized in the syllabus, holds: "Where a trustee neither exercises common skill, common prudence, nor common caution, and is either guilty of supine negligence in being ignorant of facts which ordinary intelligence would have disclosed to him, or, if known, in not exercising his best judgment upon them, and a loss results, he will be surcharged." See also Irvine's Est., 203 Pa. 602. There is here no evidence of the trustee's wilful default, but ample of supine negligence. The trust being active, it was the primary duty of the trustee to secure possession of the property, as otherwise the trust could not be executed. "When trustees have accepted the office, they ought to bear in mind that the law knows no such person as a passive trustee, and that they cannot sleep upon their trust": 1 Perry on Trusts, 6th ed., p. 462. "The first duty of a trustee, after his appointment and qualification,......is to secure the possession of the trust property and to protect it from loss and injury": Ibid., p. 704. "The trustee is bound to protect the trust property in every reasonable manner during the continuance of the trust. He must therefore, with due diligence, obtain possession of the trust property, and must then retain it securely under his own control......As a mode of obtaining secure possession, the trustee must, with all reasonable diligence, collect debts and demands, and the amounts due on choses in action, when required to do so by the terms of the trust instrument, or by the nature and objects of the trust, and he is liable for losses resulting from his neglect or unreasonable delay in this matter": 3 Pomeroy's Equity Jurisprudence, 4th ed., pp. 2441-2. "It devolves upon the trustee, and upon the trustee alone, not only to collect in the property and assets belonging to the trust estate, instead of permitting them to go into or remain in the hands of third person, but to proceed to collect within a reasonable time, and by suit, if necessary, all claims due the estate, and on a breach of duty in this respect [he is] personally liable for the resulting loss": 39 Cyc. 321;

and see Speakman v. Tatem, 48 N. J. Eq. 136, 21 Atl. 466; Halsbury's Laws of England, vol. 28, p. 117; 28 Am. & Eng. Ency. of Law, 2d ed., 1053, 1054, 1068.

An unnecessary delay in securing possession of trust property is at the personal risk of the trustee: 1 Lewin on Trusts, 8th ed., 399; and see Bispham's Principles of Equity, 10th ed., section 139. A trustee who unreasonably neglects the collection of a debt until the insolvency of the debtor is personally liable (see Shaffer's App., 46 Pa. 131; Johnston's Est., 9 W. & S. 107; Long's Est., 6 Watts 46), as is one who makes loans without security: Wilson's App., 115 Pa. 95; Gardner's Est., 199 Pa. 524.

In the case in hand it was emphatically the trustee's duty to take possession of the property, for it was given the sole power to invest and reinvest the same. The executor had no such right and, so far as appears, never attempted to exercise any. Yet, in the face of this manifest duty, the trustee took no step whatever to obtain the property for four years, nor to ascertain what had been or was being done with it, nor to require the executor to file an account at the end of the year or at any later time. The trustee held the legal title to this property with the right of possession and could not remain dormant all those years with impunity. True, there is evidence that an officer of the trustee did on possibly two occasions ask the executor to file an account, and was put off with the excuse that the estate was in litigation. A slight investigation would have shown that the only litigation was a suit brought by the executor which did not involve any of the tangible assets of the estate nor prevent an accounting and turning over of the same. An executor cannot tie up the assets of an estate by bringing suit against a stranger: see Skeer's Est., 236 Pa. 404. A slight investigation would also have shown, what the auditor finds as a fact, that all of the estate's property, here involved, was sold by the executor within the year following testator's death. So there was

no valid reason why an account thereof should not have been filed and the proceeds turned over to the trustee.

The fact that the executor was given discretion as to when he should sell the property is unimportant, inasmuch as he actually sold it within the year and no discretion was given him as to when he should turn over the proceeds. Had testator desired Jacobs to indefinitely retain possession of the trust property or its proceeds he would have said so or made him the trustee, but he did neither. It must be kept in mind that Jacobs was not attorney nor agent of the trustee, therefore the rule that a trustee will not be held personally liable for the default of a reputable attorney employed to assist in executing the trust, while sound (Landmesser's App., 126 Pa. 115; Calhoun's Est., 6 Watts 185), especially where the trustee employs the same attorney as had the testator (Bender's Est., 278 Pa. 199; Webb's Est., 165 Pa. 330), is not applicable; for the relation of attorney and client did not exist between the executor and the trustee. The mere fact that the executor was a reputable attorney did not excuse the trustee's failure to take steps to secure the trust property; nor did that fact of itself change the legal duty of the trustee. Over-confidence, even in a brother, will not excuse a failure to perform a duty imposed by the trust: Adam's Est., 221 Pa. 77.

Furthermore, there were special circumstances which should have spurred the trustee to activity. Jacobs had but little if any property and during the last two years of his life was in failing health, while for four years prior to his death the trustee held notes for more than fifteen thousand dollars, on which he was endorser, that remained overdue, with interest accumulating. The latter fact of itself was notice that Jacob's financial condition was questionable and called for action by the trustee to protect the Kline Estate (see Will's App., 22 Pa. 325) ; yet nothing was done. It would be difficult to find a more typical case of supine negligence. In Skeer's

Est., supra, p. 410, we quote with approval the language of Mr. Justice ROGERS in Johnson's Est., supra, p. 109, that: "It is a case, not of ordinary care, but of gross negligence, for he [the administrator] has failed to show that he made any effort whatever in proper time to recover the money. A mere application for payment, without more, would not have availed him. To entitle him to a credit, he must, in addition, prove that he took legal steps to recover the sum due, or that, from the notorious insolvency of the debtors, a suit would have been useless. But, so far from this being true, the probability is that if ordinary diligence had been used the money would have been recovered." The trustee could not unnecessarily suffer the estate to remain so long in the hands of the executor without security or without making any effort to obtain it: see Skeer's Est., supra; Tenth Nat. Bank v. Smith Construction Co., 242 Pa. 269; Baer's App., 127 Pa. 360; Carr's Est. (No. 1), 24 Pa. Superior Ct. 369; Kauffeld's Est., 28 Pa. Superior Ct. 162.

The suggestion, that appellants are not entitled to relief for lack of proof that timely action by the trustee would have saved the estate, is untenable. It does not appear just when the executor misappropriated the funds, but they came to his hands as early as 1913, and it is in the highest degree probable that they could then have been recovered from him. He was in good standing, with a large income as above stated, and it is unthinkable that he would have suffered the loss of his reputation and personal liberty, for the amount here involved. But by the lapse of years, the disappearance of the funds, the insolvency and death of Jacobs, the opportunity to secure the Kline Estate from him is gone. Where there is a reasonable probability that a debt has been lost by the neglect of a guardian, he is responsible: Pim v. Stalker's Exrs., 11 S. & R. 66; and see Skeer's Est., supra; Johnson's Est., supra; Strong's Est., 160 Pa. 13. As a reasonable probability that timely action by the

trustee would have averted the loss is all that is required under any view of the law and as this record disclosed more than that, we need not decide whether it was even necessary for appellants to establish such probability.

Appellants sustained a net loss of $13,731.19 by the default of Jacobs and for that amount the accountant (trustee) should be surcharged. The trustee's final account could have been filed and the fund, if intact, gathered in and turned over to appellants within a few months after the death of the widow; the balance of the year 1920 would have afforded ample opportunity for that purpose; hence, accountant should be charged with interest thereon from January 1, 1921.

The executor of Jacobs filed a final account for him as executor of the Kline estate, in which credits amounting to $2,242.20 were claimed for payments he had made testator's widow, as life tenant. It is not entirely clear that such payments were made out of the corpus of the estate, and, since they were allowed in the audit of the account last mentioned, we will not surcharge the trustee therewith.

. The trustee having been adjudged guilty of supine negligence cannot be allowed compensation for services to the trust, nor for legal services before the auditor: Lafferty's Est., 184 Pa. 502. The audit was necessary because of the fault of the trustee, hence, the latter and not the estate must bear the cost thereof: Grollman's Est. (No. 2), 273 Pa. 565.

The decree of the court below is reversed, and the record is remitted with directions to restate the account in accordance with this opinion; the costs of this appeal to be paid by the Lehigh Valley Trust Company, appellee.