## Reibel's Estate

*George V. Strong*, for exceptant.
*Edwin S. Ward*, contra.

KUN, J., May 29, 1935.—On June 25, 1927, guardians for the incompetent in this case were appointed pursuant to and in accordance with the provisions of the Act of May 28, 1907, P. L. 292, amended by the Act of April 15, 1915, P. L. 124. Successive guardians were thereafter appointed. Following the death of the ward in December 1934, and on the accounting by the last guardians, her

executors filed exceptions seeking to surcharge the guardians for having failed to convert certain nonlegal securities.

The sixth section of the Act of 1907 provides that guardians appointed under it shall have precisely the same power and be subject to the same duties as a committee in lunacy. The act authorizing, governing and controlling committees in lunacy was approved June 13, 1836, P. L. 589. Section 34 of that act provides:

"It shall be lawful for any committee as aforesaid, by the leave, and under the direction of the court of Common Pleas having jurisdiction, as aforesaid, to invest the money of a lunatic or habitual drunkard, in such stocks, or upon such security, as shall be approved of by such court, and if such investment be made, bona fide, the committee making the same, shall not be liable for any loss that may arise thereby."

On petition of the guardians prepared by their competent counsel setting forth that the securities were nonlegal, that dividends were being received and that in the petitioners' judgment it was for the best interest of the estate to retain the securities listed the court entered a decree authorizing their retention. Similar decrees were thereafter entered, on the petition of succeeding guardians. Exceptant seeks a surcharge of $24,053,24 representing the difference between the appraised value of the securities in question as of 1927 and the market prices quoted on the date of the audit of the final account of the investments remaining unsold, plus the selling price of those sold, without indicating the respective alleged liability of any of the guardians, the claim being made that the court was without authority to make the orders it did. However, no appeal from any of the orders was ever taken. Exceptant relies on article III, sec. 22, of the Constitution of Pennsylvania which provides that: "No act of the General Assembly shall authorize the in-

vestment of trust funds by executors, administrators, guardians or other trustees, in the bonds or stock of any private corporation, and such acts now existing are avoided saving investments heretofore made." No decision has been cited in support of the contention made by the exceptant.

While there is a duty on executors and trustees to convert nonlegal securities within a reasonable time: Taylor's Estate, 277 Pa. 518; this does not apply, in our opinion, to guardians of lunatics or incompetents, acting under court orders. Even in the cases of executors and trustees, if common prudence and good faith are exercised, they will not be surcharged for retention of such securities: Brown's Estate, 287 Pa. 499. A consideration of the cases convinces us that the Act of 1836 was not repealed by the constitutional provision quoted, and the Act of 1907 is not affected thereby, although in view of the constitutional restriction our courts will not, in disregard of it, authorize the making of so-called nonlegal investments; but that is a very different thing from the exercise of the judgment of the court authorizing the continuation of investments made by the ward himself in cases of lunatics and incompetents. The wisdom of the continuance of the provisions of the Acts of 1836 and 1907 is obvious when the mental recovery of the ward is always a possibility and the diversity of the character of the estates is considered. In the instant case it will be borne in mind that no investments were made by the guardians in nonlegal securities. The securities were received by the guardians of the ward. In strict compliance with the acts the guardians sought the advice of the court which authorized the retention of the securities.

In Simco's Estate, 6 D. & C. 813 (1925), it is said that a committee in lunacy is to invest the money of the lunatic by leave and under the direction of the court of common pleas in such stocks or upon such securities as shall

be approved by the court and such investments, if bona fide made, are at the risk of the estate; if made otherwise, they are at the risk of the committee. In Commonwealth, ex rel., v. McConnell, 226 Pa. 244 (1910), the lower court refused to sanction nunc pro tunc, certain nonlegal investments made by the guardians and this was affirmed by the Supreme Court. There is the clearest statement in the case that the court could have approved such investments. However, the guardian failed to consult the court and it could hardly sanction the unauthorized action after the loss was sustained. Justice Mestrezat said at page 248:

"The legislature has made provision for the protection of the committee of a lunatic in the investment of trust funds, and the committee should avail himself of the statute. The lunatic is the ward of the court and the committee is simply its bailiff or agent in protecting him and his estate [as distinguished from an executor, trustee or other fiduciary]. There is every reason, therefore, why the court should be consulted about the investment of his funds. This was the idea of the legislature when it enacted the statute of 1836 authorizing the committee to obtain the protection of the court in the investment of a lunatic's estate." It is to be noted that these cases arose long after the adoption of the Constitution.

It is clear, in the instant case, that the guardians exercised their best judgment as evidence by their petition under oath, that they were advised by competent counsel and had the approval of the court. With respect to advice of counsel, as stated in Dempster's Estate, 308 Pa. 153, "Where a guardian or other fiduciary acts in good faith, under the advice of a competent lawyer, he is not liable for mistakes of law, if such there be, or for errors in judgment: During's App., 13 Pa. 224 (Gibson, C. J.) ; Bradley's App., 89 Pa. 514; Kline's Est., 280 Pa. 41."

In considering the matter before us it is important to bear in mind the distinction pointed out in Coggin's Ap-

peal, 3 Walker 426, wherein Judge Penrose said, at page 427:

"The rule with regard to the duty of a trustee, into whose hands investments made by the testator himself may come, differs very greatly from that which governs him in making his own investments. In the latter case he becomes liable if he deviates from the line marked out by the law, should a loss arise. In the former case much is left to the discretion of the trustee, and if in the honest and proper exercise of that discretion, he delays the realization, he may not be held liable for any loss arising from such delay". Again on page 443, Judge Ashman, delivering the opinion of the court in banc dismissing exceptions, said:

"But in the varying circumstances peculiar to the estate or to the time, a high sense of duty may compel him to disregard a rule which was really meant for his protection, and to assume a responsibility from which it would have freed him, in order to save the estate from possible disaster"; and on page 445: "The single test to be applied to his conduct is, was it characterized by good faith and common prudence? Apart from the fact that the accountant placed himself under the direction of counsel, which according to Vez. v. Emery, 5 Ves., 141, would of itself have saved him from liability; the facts found by the auditing judge go far to vindicate his action upon both grounds." In a per curiam opinion the Supreme Court said, at page 448:

"In determining not to convert immediately the stocks and other assets of the estate, which were investments made by the testator in his lifetime, the appellee acted in perfect good faith in the honest exercise of his best judgment, for a mistake in which it would be wrong to hold him personally responsible."

It is also clear that the confirmation of each of the prior accounts was final. The Act of April 15, 1915,

P. L. 124, amending the Act of May 28, 1907, P. L. 292, provides for filing accounts &c. by the guardians, requiring notice to be given to the wife or husband or next of kin, relates to confirmation, &c. The prior accounts were filed and confirmed after proper legal notice to the next of kin as required by the act. No abuse of discretion having been shown on the part of the court in the confirmation of these accounts or fraud on the part of the guardians, no question can now be raised as to anything that took place prior to the confirmation of the last account on November 23, 1932: Wachter's Case, 299 Pa. 153 (1930). In that case, which came before the late Judge Taulane of this court, the guardian appointed under the Act of 1907 filed his account, and a petition for his discharge; the account was confirmed but the prayer for discharge refused on the ground that the evidence showed the ward not sufficiently recovered to take care of his property. Subsequently, on May 11, 1929, the Continental-Equitable Title & Trust Company was appointed guardian in place of the former one and in a per curiam opinion the Supreme Court said, "The order of May 11, 1929, is the final decree, and we assume it to be the one of which appellant complains; all questions embraced in and leading up to that order involved matters within the power of the court below, and we find no abuse of discretion."

In the case before us, on November 23, 1932, the account of Harvey C. Masland and Continental-Equitable Title & Trust Company was confirmed, and on the same date the Northwestern National Bank & Trust Company of Philadelphia was appointed substituted guardian in place of the Continental Equitable Title & Trust Company. On December 21, 1932, the then guardians presented a petition to this court setting forth, inter alia, that the estate awarded to them and carried at the original appraisal of $31,861.98 was worth at a reappraisal as of December 1, 1932, but $5,149.40 and thereupon a decree

was made authorizing the guardians to retain the securities or to convert them from time to time and reinvest in legal trust securities as and when they saw fit. Since that time there has been an appreciation in their value. No doubt the principal depreciation occurred in 1929, 1930, and 1931 but after October 1929 the condition of the stock market as well as general business conditions were such that no one, unless obliged to do so, sold his securities. Those who owned securities outright held them for the return of that prosperity which was always said to be "around the corner". That was the common prudence. The guardians here cannot be surcharged for following it aside from the court's orders under which they were acting.

Neither Schenkel's Estate, 250 Pa. 504, nor Shirk's Estate, 20 Dist. R. 63, cited in exceptant's brief, are authority for surcharging the guardians in this case. In the former case it was held that guardians were not liable beyond what they received unless in case of gross negligence. In that case the decree of the lower court was modified and while the guardian was surcharged because of evidence of sharp practice and designing acts on his part, having made no effort whatever to collect moneys belonging to the ward from the former guardian or his bondsman, the court said on page 507:

"Under these circumstances that would be a harsh rule which would visit upon the present accountant the delinquencies of a father who was administrator, and of a former guardian, both long since dead, and thus make him answerable for transactions which took place several years before he was appointed and account for moneys never received by him. As to this item of surcharge we cannot regard appellant as being grossly negligent, and guardians are not liable beyond what they actually receive unless in case of gross negligence: Calhoun's Est., 6 Watts 185; Swoyer's App., 5 Pa. 377; Landmesser's App., 126 Pa. 115."

In the instant case there was confirmation of the accounts after due notice to the next of kin as required by the act. Nothing has been shown to indicate that the guardians did anything but exercise good faith, always acting with the approval of the court. Their judgment did not differ from that of the hundreds of thousands of others during the same period, not only of individual investors, but of large financial institutions as well. Shirk's Estate, 20 Dist. R. 63, the other case cited by exceptant, was also one of moneys wrongfully appropriated and involved guardians of a minor. The first guardian appropriated the estate's money to his own use, showed a small balance in his account which was perfunctorily confirmed, and the succeeding guardian subsequently, in collaboration with the former guardian, was guilty of like practices and there, as the exceptant seeks to do here, it was attempted to impeach the second guardian for allowing the first guardian's account to be confirmed. The court said at page 65:

"But notwithstanding, on the merits of the case, the conclusion reached appears to be right, it must be conceded that the short way taken to it was technically irregular, but not necessarily wrong. If such was the practice, a succeeding guardian might suffer great injustice, for, however negligent he may have been, it would be dangerous to fix a responsibility by reason of a predecessor's culpability without first having had a review of his account. Ordinarily an accountant is not expected to come into court prepared to meet charges against his predecessor, and especially so if his acts have had the sanction of the court by a decree confirming his account; but this is not an ordinary case, and the petitioner was not exempt from answering for his predecessor's fraudulent acts at which, at least, he connived, and in effect he admitted all claims and pleaded guilty to all complaints."

In the instant case there was no connivance or fraud in fact or implied. The successive guardians acted in the best of faith and always under decrees of the court. The judges of this court who entered the several decrees from time to time acted with lawful authority, and so far as any criticism of their judgment may be implied, we point to the pertinent comment of Justice Kephart in Brown's Estate, 287 Pa. 499, at page 503 as follows: "The preservation of an estate from loss should be the primary thought and care of our courts. In the determination of what is business judgment, too much stress must not be laid on retrospection. Our after-sight is not to be the sole judge, though it may be useful." See also Macfarlane's Estate, 317 Pa. 377.

There is no basis whatever in the law for surcharging any of the guardians.

The exceptions are dismissed.